*316
 
 Wkight, Judge,
 

 delivered the opinion of the Court.
 

 The question which is presented to the consideration of the Court by this case is, whether it is incumbent on a purchaser of land sold for taxes, acknowledged to have been due at the time of sale, to shew on the trial of an action of ejectment, brought against him by the person who was bound and had failed to make payment of such taxes, any thing more then the sheriff’s conveyance for the land so sold. The determination of this question must depend upon a proper construction of the several acts of Assembly, authorising the sale of land for taxes, and the principles which have influenced decisions in analogous cases. The first act which made lands liable to be sold for the payment of taxes, was passed in the year 1792, ch. 2. The fifth section of this act, after authorising the Sheriif to distrain the land of any person failing to make payment of their public taxes, to sell the same, and make a conveyance to the purchaser, declares, “that such conveyance shall be good and valid in Law, the land so sold being first advertised for such length of time as is required in cases of execution.” And the sixth section of the same act declares, “ that if any person liable for the payment of any taxes on land, shall, before they are paid, sell the same and remove out of the county where the land is situated, the person purchasing the land shall be subject to the payment of the taxes due.thereon, and shall be proceeded against, as if he had originally given in the same.” From these sections it may be fairly deduced, that the Legislature intended that a failure on the part of any person bound for the payment of the taxes, due on any lands, should operate as a lien on such lands, and that the sale which should be made by the Sheriff'in consequence of such failure, should convey to the purchaser a good title to the lands against the delinquent, and all persons claiming under him, notwithstanding the Sheriif should fail in making the advertisements required to be made, or in the performance of any duty
 
 *317
 
 enjoined on him by the act. But it is said that the act of 1796, ch. 1, sec. 5, under whioh the sale was made in the present case, contains express negative words $ “that it shall not be lawful for any of the Sheriffs in this state, either by themselves or deputies, to sell lands for their taxes, until the same hath been first advertised for ■ sale in the North-Carolina Journal, the State Gazette, or the Fayetteville Minerva, for the space of one month, and also in the county in Which they are situated, in manner as heretofore required by law ,* which advertisements shall mention the situation of the lands, the streams near which they lie, the estimated quantity, the names of the tenants, the reputed owners, &c.” And that these words are equivalent to saying, that a sale other-, wise made is not a legal sale, and consequently a conveyance under srich sale cannot transfer any title to the purchaser. It is believed that this act was intended to impose additional duties on the Sheriffs, and that the provisions of this, as well as the othe.r act, are merely directory to them of their duty; and that although a failure in the performance of any part of it might subject them to an action, in which they would he compelled to indemnify the owner of any land which might be irregularly sold, to the extent, of the injury received fyy such sale, yet that it ought not to destroy the title of the purchaser, who. has a right to presume that a public officer known to possess the power to sell, has taken every previous step required of mm by the Law, under which he sells. This construction appears to- be in conformity with the decisions in cases of sales made of land by Sheriffs under writs of execution, which are analogous in principle to the cases of sales for the payment of taxes. The act under which the Sheriff's authority to sell is derived in cases of execution, contains negative words. The 29th section of the act óf 1777, ch. 2, after directing in what cases, and in what manner executions shall be issued against lands and tenements, declares, “ that where any Sheriff shall have levied pro
 
 *318
 
 cess upon any lands and tenements in manner aforesaid, and judgment shall have been thereupon had, he shall not proceed to sell the same, until m the most public place in his bailiwick, he shall, forty days at least before the day of sale, have advertised the same.” These words are of equal import to thosé contained in the act of 1796, in as much as they declare, that the Sheriff shall not sell, without first advertising. Yet in the cases of sales of I'and under executions, the purchasers have never been considered as bound to support their titles by proof, either of the advertisement of the Sheriff, or that the Defendants in execution had no goods and chattels on which a levy could be made; but are only bound to prove by the judgment and execution, the authority of the Sheriff to sell. The same principle that would require proof of the advertisement, would require proof that it was made in the manner prescribed by the act, that is, in some one of the papers ¡nentioned in the act, in which shall be stated all the circumstances enumerated. This would so embarrass sales of this kind, and throw so many difficulties in the way of persons willing to hid a fair price for the land, that they would not be willing to purchase. For it wopld not only be necessary to prove these facts on any particular occasion, but they must preserve the evidences of them, with their titles, to be used at any distant period, whenever these titles might be made the subject of controversy. The consequences \r$uid be that not only the difficulty of collecting the public revenue would be increased, but the lands would become a subject of speculation merely, to those who would, by purchasing at very reduced prices, be willing to encounter the inconveniences and cisques of purclu «iug under these embarrassing circumstances. Let jui .jtiient be entered for the Defendant.